AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| RONELL NAPIER, JR. (-01); NATHAN MANSFIELD (-02) | ) ) ) ) | 1:19-mj-0080 |
| Defendant(s) | | |

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 21, 2019__ in the county of __Marion__ in the __Southern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), and Title 18, United States Code, Section 2 | Possession with Intent to Distribute 500 Grams or More of Mixture or Substance Containing Methamphetamine (Aiding and Abetting) |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_[signature]_
Complainant's signature

Andrew Deddish, DEA Task Force Officer
Printed name and title

Sworn to before me and signed in my presence.

Date: 01/22/2019

_[signature]_
Judge's signature

City and state: Indianapolis, Indiana

Debra McVicker Lynch, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Andrew Deddish, a Task Force Officer (TFO) with the United States Drug Enforcement Administration (DEA), being duly sworn, state as follows:

## I. INTRODUCTION & BACKGROUND OF INVESTIGATION

1. I am currently a Task Force Officer with the Drug Enforcement Administration (DEA) assigned to the Indianapolis District Office (IDO) HIDTA Task Force Group 52. I have been employed as a DEA Task Force Officer (TFO) since May 2017. I have been employed with the Indianapolis Metropolitan Police Department (IMPD) as a law enforcement officer for over twenty years and have worked controlled substance investigations for over fifteen years. My primary duty as a TFO is to investigate criminal violations of the federal controlled substances laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, and 846.

2. During my employment as a law enforcement officer, I have received specialized training in the means and methods by which drug traffickers unlawfully manufacture, import, distribute (and possess with intent to distribute) controlled substances, including, but not limited to, the use of telephones and numerical codes and code words to conduct drug trafficking activities. I have also received specialized training in the ways in which international drug trafficking organizations manufacture and smuggle controlled substances into the United States, as well as the means and methods by which international drug trafficking organizations export the proceeds of their drug trafficking activities.

3. During my employment as a law enforcement officer, I have received specialized training in the enforcement of laws concerning the trafficking of controlled substances. I have also received training regarding, and personally participated in, various types of investigative activity, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing

1

and/or interviewing of defendants, witnesses, confidential sources and other individuals who have knowledge concerning the unlawful trafficking in controlled substances; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; and, (f) the handling and maintenance of evidence.

## II. PRELIMINARY STATEMENT & BASIS OF INFORMATION

4. This Affidavit is made in support of a complaint for Targets Nathan MANSFIELD (MANSFIELD) and Ronell NAPIER, Jr. (NAPIER JR). As set forth below, probable cause exists to believe that MANSFIELD and NAPIER JR, aiding and abetting one another, possessed with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

5. Except as otherwise noted, the information set forth in this Affidavit has been provided to me by members of the DEA Special Agents, Task Force Officers, or other law enforcement agents or officers. Unless otherwise noted, whenever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Likewise, information resulting from physical surveillance, except where otherwise indicated, does not necessarily set forth my observation, but rather has been provided directly or indirectly through other DEA Special Agents, TFOs, Indianapolis Metropolitan Police Department (IMPD), Indiana State Police (ISP) officers, or other law enforcement officers who conducted the surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects, and record checks has been obtained through the Indiana Data and Communications System or the National Crime Information Center computers.

6. Because this Affidavit is being submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for said application.

### III. FACTS & CIRCUMSTANCES REGARDING PROBABLE CAUSE

7. On January 21, 2019, Detective Keith Hartman, with the IMPD Criminal Interdiction, was conducting Parcel Sort at local shipping company. Detective Keith Hartman was given verbal consent from the local shipping company to enter the business and visually inspect various parcels to locate suspect parcel(s). During his inspection, he observed the parcels as they passed, looking for certain indicators which led him to believe that a parcel was suspicious. He has attended numerous interdiction trainings concerning suspicious parcel detection and has compiled a list of indicators based on his training and experience, and the experience of other law enforcement officers, which he looked for during his inspection. In the instant case, he observed the suspect parcel was shipped from a state known by Detective Hartman to be a source state for the importation of controlled substances, California. The suspect parcel also drew his attention because the parcel was in a generic box from a 3rd party shipper. The name listed on the parcel was Toya SPELLS and the address listed on the suspect parcel was 622 Haugh St, Indianapolis, IN 46222. (The address of 622 Haugh Street is a residence that makes up one half of a two-unit duplex and is located within the Southern District of Indiana, Indianapolis Division.) The return address listed on the suspect parcel was "STORE MANAGER" Box City #6, 13452 Washington Blvd, Marina Del Rey, California, 90292.

8. K9 Jada has been certified in Narcotics Detection and Detective Keith Hartman and his K9 partner Jada are certified yearly as a Narcotic Detection Canine "Team". They were

3

last certified on October 12, 2018, by an independent certified canine trainer with the Indianapolis Metropolitan Police Department. Detective Hartman is employed by the Indianapolis Metropolitan Police Department and has been so for 20 years. He is currently assigned as a Criminal Interdiction Investigator and Narcotics Detection Canine Handler in the IMPD Investigations Division/Covert Operations Branch/Criminal Interdiction Section. Detective Hartman (Unit #2356/ID#H7097) has been a certified K9 handler since 2008 and has been working with his K9 partner Jada since 2018. K9 Jada has been trained and certified in the detection, by odor of marijuana, cocaine, crack cocaine, heroin, methamphetamine, and MDMA. While working his canine partner, he conducted a narcotic detection examination of the above-described parcel.

9. The suspect parcel was placed with three other similarly shaped, and similar in size parcels, at a location at the shipping company where K9 Jada could examine such parcels. Upon such examination, Detective Hartman observed that K9 Jada gave a positive indication to the suspect parcel. The positive indication is consistent with the canine's detection of the odor of a controlled substance. Detective Hartman applied for search warrant through Marion County Superior Court and was granted a search warrant (49G20-1901-MC-002398) on the suspect parcel.

10. At approximately 9:05 a.m., Detective Hartman executed the search warrant on the suspect parcel and located a "Tidy Cats" cat litter tub that contained several clear plastic packages containing a crystal like substance. The total weight of the clear plastic packages was approximately 16 pounds. DEA TFO Andrew Deddish conducted a field test from a core sample of one of the clear plastic packages and received a positive test for Methamphetamine. After the positive test for Methamphetamine, Detective Hartman applied for and was granted an

4

Anticipatory Search Warrant (49G04-1901-MC-002402) by the Marion County (Indiana) Superior Court for 622 Haugh St, Indianapolis, Indiana.

11. Approximately 50 grams of Methamphetamine were removed from the same package of Methamphetamine that was field tested and was used to complete a Controlled Delivery. The approximately 16 pounds of methamphetamine were removed from the suspect parcel and were replaced with fake drugs or sham that looked like the drugs that had been removed. The approximately 50 grams of methamphetamine removed from the original package was placed inside the suspect parcel along with a GPS Tracking Device. The suspect parcel was resealed and returned to its original appearance.

12. At approximately 1:30 p.m. on January 21, 2019, TFO Andrew Deddish and other members of his surveillance team established surveillance on the residence of 622 Haugh St. The surveillance team did not observe any vehicles or people at the residence. All avenues to the residence and entrances/exits into the residence were placed under surveillance and remained under surveillance until the completion of the operation.

13. At approximately 1:54 p.m., Detective Plummer, IMPD Criminal Interdiction, acting in an undercover capacity and posing as a package delivery man, delivered the suspect parcel to residence of 622 Haugh St. Detective Plummer knocked on the front door and left the suspect parcel on the front porch of the residence. The suspect parcel was in full view of TFO Gabe Cuevas during the time the suspect parcel was outside the residence. Detective Plummer left the residence and the area. (At this time, the suspect parcel was marked as "delivered" in the shipping company's tracking system, which is available for senders and/or recipients to monitor online.)

14. At approximately 1:54 p.m., a gray Toyota Avalon with Georgia license plates

5

was observed driving in the area of 622 Haugh St. The same Toyota had been observed by surveillance units in front of 622 Haugh St earlier on the morning of January 21, 2019. (Based on my training and experience, I believe that this behavior is consistent with the driver of the vehicle conducting counter-surveillance, i.e., looking for evidence of law enforcement officers in the vicinity of location(s) or item(s) of importance (which, in this case, are 622 Haugh St and the suspect parcel).)

15. At approximately 2:00 p.m. (approximately 6 minutes after delivery of the suspect parcel), TFO Andrew Deddish observed the gray Toyota drive to the 700 block of Haugh St and pull to the curb and park. TFO Deddish then observed a male later identified as Ronell NAPIER JR exit the Toyota and walk south on Haugh St. (There were no other occupants of the gray Toyota.)

16. At approximately 2:01 p.m., TFO Cuevas observed the door to 622 Haugh St open and a male later identified as Nathan MANSFIELD step out onto the front porch. TFO Cuevas observed NAPIER JR walking south on Haugh St and walk directly to the front porch of 622 Haugh St and enter the porch and begin to have a conversation with MANSFIELD.

17. At approximately 2:02 p.m., TFO Cuevas observed MANSFIELD open the front door of 622 Haugh St and hold it open for NAPIER JR, who picked up the suspect package. Both individuals then entered the residence.

18. At approximately 2:04 p.m., TFO Cuevas and TFO Deddish received an alert that the suspect package had been opened inside 622 Haugh St.

19. At approximately 2:05 p.m., TFO Andrew Deddish, with other members from the IMPD Interdiction Unit and Metro Drug Task Force (MDTF), executed the Anticipatory Search Warrant at 622 Haugh St. As fully marked police units from the IMPD Interdiction Unit were

arriving at the front of the residence, Detective Dale Young of the MDTF arrived at the rear of the residence. As Detective Young pulled to the rear of the residence, he observed NAPIER JR and MANSFIELD exiting the rear of the residence. Detective Young was wearing a protective raid vest with the word POLICE spelled out in three inch white lettering front and back with an IMPD badge visible attached to the front of the vest. As soon as NAPIER JR and MANSFIELD saw Detective Young arrive at the rear of the residence, both individuals attempted to flee on foot southbound away from the residence. Detective Young immediately took MANSFIELD into custody with other members of the IMPD Interdiction Unit, while NAPIER JR continued to run southbound, climbing over a fence into a wooded area.

20. After securing MANSFIELD, Detective Young and other detectives pursued NAPIER JR into the wooded area and apprehended him in the rear of a residence located at 3014 Michigan St (approximately one block from 622 Haugh St).

21. While NAPIER JR and MANSFIELD were being apprehended, the entry team continued to clear the residence of 622 Haugh St to ensure the residence was made safe. While clearing the residence, officers located two juvenile females located on the second floor of the residence in separate bedrooms.

22. At approximately 2:20 p.m., both NAPIER JR and MANSFIELD were returned to 622 Haugh St. A copy of the search warrant and Miranda Warnings were read to both NAPIER JR and MANSFIELD. Both were asked if they understood what was read, and each individual verbally responded in the affirmative that they understood the search warrant and their Miranda Warnings.

23. During a search of the residence, law enforcement found the suspect package in the middle of the living room, opened with its contents exposed.

7

24. While officers and agents were conducting the search of the residence, a female identified as Valicia SPELLS arrived at 622 Haugh St and told TFO Deddish that the residence was the home of her and her two juvenile daughters. TFO Deddish advised SPELLS that he was at the home to execute a search warrant and advised SPELLS of her rights under Miranda. SPELLS stated that she understood her rights.

25. TFO Deddish conducted an interview with SPELLS, during which she stated that she knew MANSFIELD from a prior relationship, but that he did not have permission to be at her home. Nor did she have any knowledge that he as at her home on January 21, 2019. SPELLS also stated that she did not know NAPIER JR and had never met him prior to her returning to her home on January 21, 2019, and speaking with officers. SPELLS also stated to TFO Deddish that she was not expecting a package to be delivered to her home, and that she had never used the name Toya SPELLS. (Based on my training and experience, I know that drug traffickers often ship packages containing drugs and other contraband to addresses other than their own in order to avoid detection by law enforcement. Similarly, they frequently list names other than their own as the senders and recipients of contraband packages in order to avoid detection by law enforcement.)

26. TFO Deddish also conducted an interview of the two female juveniles located at the residence. They both stated that they had no knowledge of NAPIER JR; nor did they have any knowledge of a package that had been delivered to their residence at 622 Haugh St. They further stated that they were on the second floor of the residence while MANSFIELD was on the first floor, and that they had no knowledge of his activities while he was in their residence.

27. MANSFIELD and NAPIER JR were taken into custody. During a search of NAPIER JR's person, officers and agents found a Delta Airlines Boarding Document indicating

8

that NAPIER JR had arrived in Indiana from Los Angeles, California, on January 18, 2019. As noted above, the return address on the suspect parcel was in Marina Del Rey, California. Marina Del Rey is in the immediate vicinity of Los Angeles International Airport.

28. A preliminary check of NAPIER JR's criminal record by law enforcement showed convictions for, but not limited to: 21 U.S.C. §§ 846, 841(A), (B) (1) (B) (IV): Conspiracy to manufacture Phencyclidine (PCP) To distribute and possess with intent to distribute, and illegally possessing a listed chemical.

29. A preliminary check of MANSFIELD's criminal record by law enforcement showed convictions for, but not limited to: Dealing in a Narcotic Drug as a Level 2 felony.

## IV. CONCLUSION

30. Based on the foregoing information, I believe that there is probable cause to believe that MANSFIELD and NAPIER JR, aiding and abetting one another, possessed with intent to distribute controlled substances (i.e., 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine) in the Southern District of Indiana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.

*[signature]*
Andrew J Deddish, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this 22nd day of January, 2019.

*[signature]*
The Honorable Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

9